Filed 3/1/2023 10:34 AM
Karen L. Wilson
District Clerk
Van Zandt County, Texas

Stormy Canady

CAUSE NO. 23-00033 _____

| | | |
|---|---|---|
| WEBSTER ENTERPRISES, INC. | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | 294TH |
| v. | § | ____ JUDICIAL DISTRICT |
| | § | |
| LIBERTY MUTUAL FIRE | § | |
| INSURANCE COMPANY and | § | |
| SUSAN ZEINERT | § | |
| Defendants. | § | VAN ZANDT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW, WEBSTER ENTERPRISES, INC.** Plaintiff, and files this, his Original Petition against Defendants, **LIBERTY MUTUAL FIRE INSURANCE COMPANY and SUSAN ZEINERT** for cause of action would respectfully show as follows:

### DISCOVERY CONTROL PLAN LEVEL

1. Pursuant to Rule 190.3 of the Texas Rules of Civil Procedure, Plaintiff designates this case to proceed under a Level 2 Discovery Control Plan.

### PARTIES AND SERVICE

2. Plaintiff, **WEBSTER ENTERPRISES, INC.**, is a corporation operating in Van Zandt County, Texas.

3. Defendant, **LIBERTY MUTUAL FIRE INSURANCE COMPANY**, is an insurance company engaging in the business of insurance in the State of Texas and may be served with process by certified mail by serving its Attorney for Service, Corporation Service Company, at the following address: 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

**PLAINTIFF'S ORIGINAL PETITION**      Page 1 of 13

4. Defendant **SUSAN ZEINERT** is an individual engaging in the business of insurance in the State of Texas and may be served with process by certified mail at the following address: 7900 Windrose Ave., Plano, TX 75024.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this case because the amount in controversy is within the jurisdictional limits of the Court. Plaintiff seeks monetary relief of $250,000 or less.

6. This court has jurisdiction over Defendant Liberty Mutual because it is an insurance company engaging in the business of insurance in the State of Texas.

7. This court has jurisdiction over Defendant Zeinert because he is an individual domiciled in the State of Texas.

8. Venue in Van Zandt County, Texas is proper in this case because the insured property is situated in Van Zandt County, Texas.

## FACTS

9. This case is about the unfair, deceptive, and bad-faith denial of covered homeowners' insurance benefits and a breach of the insurer's duty of good faith and fair dealing and numerous violations of the Texas Insurance Code.

10. No insurer may engage in unfair claim settlement practices. 28 Tex. Admin. Code § 21.203. Liberty Mutual systematically compels policyholders to initiate suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them in violation of the Unfair Claim Settlement Practices Act.

**PLAINTIFF'S ORIGINAL PETITION**                                    Page 2 of 13

11. Plaintiff is the named insured in Liberty Mutual Policy No. YU2-Z91-468712-030 hereinafter referred to as "the Policy." The policy is a replacement cost policy. The insuring agreement covers losses due to windstorm or hail.

12. On or about, April 1, 2020, a severe hail and windstorm tore through the City of Canton. Plaintiff's property was in the path of the storm. Plaintiff's property suffered extensive damage. Thereafter, Plaintiff reported a $143,702.10 claim to Defendant.

13. Defendant dispatched adjuster Susan Zeinert to investigate Plaintiff's claim. However, Zeinert denied then closed the claim absent conducting a reasonable investigation into all the covered damages to the property which constitutes an unfair or deceptive claim settlement practice with respect to an insurance claim.

14. Here, the adjusters assigned to Plaintiff's claim were placed in a position to help Plaintiff in a time of distress after a devastating storm and it was critically important that they take enough time to properly do their jobs and analyze all the damage to Plaintiff's property. Instead, the adjusters handled the claim in a manner calculated to construct a pretextual basis for underpayment of Plaintiff's claim.

15. Under a replacement cost policy, the liability limits of the policy and the premium paid by the insured are determined on the basis of the replacement cost of the structure. The value of contractor's overhead and profit, as well as sales tax on building materials, has been included in the limit of liability for which the insured has paid premium. It is settled law that insurers may not deduct, or withhold, contractors' overhead and profit (O&P) and sales tax from an ACV

payment. *Tolar v. Allstate Tex. Lloyd's Co.*, 772 F. Supp. 2d 825, 831 (N.D. Tex. 2011). However, Defendant systematically denies prospective contractors' overhead and profit and sales tax on every claim. Defendant attempted to settle a claim for less than the amount to which a reasonable person would have believed he was entitled by reference to an advertisement made by Liberty Mutual or person acting on behalf of Liberty Mutual by excluding contractors' overhead and profit.

16. Liberty Mutual failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim after Liberty Mutual's liability became reasonably clear. A reasonable objective investigation would have revealed the extensive damage and Plaintiff would have been fully compensated under the terms of the Policy.

17. Together, Defendants set about to deny or underpay a properly covered loss to Plaintiff's detriment.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

18. Plaintiff incorporates herein by reference paragraphs 1 through 17.

19. An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed.

20. An insurance policy, however, is a unique type of contract because an insurer generally has exclusive control over the evaluation, processing, and denial of claims, and it can easily use that control to take advantage of its insured. Because of this inherent "unequal bargaining power," the Texas Supreme Court concluded that the "special relationship" between an insurer and insured justifies the

imposition of a common-law duty on insurers to "deal fairly and in good faith with their insureds."[1]

21. Under the terms of policy, Defendants' agreed to pay for direct physical loss to property caused by hail or wind damage. Moreover, Defendants' agreed to pay covered losses as follows:

> c) If we do not approve payment of your claim or require more time for processing your claim, we must:
> 1) give the reasons for denying your claim; or
> 2) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

22. Liberty Mutual breached the terms of the agreement by failing to meet contractual deadlines and provide the reasons for denying the $148,462.10 claim. Liberty Mutual failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim after Liberty Mutual's liability became reasonably clear. A reasonable objective investigation would have revealed the extensive damage and Plaintiff would have been fully compensated under the terms of the Policy.

23. When adjuster Zeinert denied the $148,462.10 claim, Defendant breached the loss settlement clause in the policy. The proof of loss condition was waived because it was never requested before the claim was denied. To date, Plaintiff has not

---

[1] *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018).

**PLAINTIFF'S ORIGINAL PETITION**                                     Page 5 of 13

received all benefits he is entitled to, when the policy required payment by, June 1, 2020, 60 days after notice of the claim.

24. If Plaintiff never repairs or replaces the damaged or destroyed property, he's still entitled to actual cash value of the damaged property. Indemnity is the foundation of an insurance policy. The objective is that the insured should neither reap economic gain nor incur a loss if adequately insured. This objective requires that the insured receive a payment equal to that of the covered loss so that the insured will be restored to the same position after the loss as before the loss.

25. The calculation of actual cash value will result in an under-payment if the insurer fails to include all damaged property or deducts prospective contractors' overhead and profit and sales tax in determining the actual cash value in a replacement cost policy. To be sure, "the deduction of prospective contractors' overhead and profit and sales tax in determining the actual cash value under a replacement cost policy is improper, is not a reasonable interpretation of the policy language, and is unfair to insureds."[2]

26. Generally, the objectives of indemnity will be met if actual cash value is calculated as replacement cost with proper deduction for depreciation. There is no situation in which the deduction from replacement cost of general contractors' overhead and profit and/or sales tax on materials will be the correct measure of actual cash value. Under a replacement cost policy, the liability limits of the policy and the premium paid by Plaintiff are determined on the basis of the replacement cost of the

---

[2] *See* TDI Bulletin No. B-0045-98 available online at the Department's website:
http://www.tdi.state.tx.us/bulletins/1998/b-0045-8.html.

**PLAINTIFF'S ORIGINAL PETITION**                                              **Page 6 of 13**

structure. The value of contractor's overhead and profit, as well as sales tax on building materials, has been included in the limit of liability for which Plaintiff paid for in exchange for insurance coverage.

27. When Defendants', in determining actual cash value, excluded costs that are included in the determination of liability limits, on which Plaintiff's premium was based, it breached the contract because Defendants' received premium on insurable values for which it never intended to pay.

28. Plaintiff submitted a valid claim for hail and wind damage within the policy period and Liberty Mutual breached the contract by denying the claim in violation of the provisions cited above.

## SECOND CAUSE OF ACTION
## UNFAIR OR DECEPTIVE ACTS OR TRADE PRATICES

29. Plaintiff incorporates herein by reference paragraphs 1 through 28.

30. No insurer may engage in unfair claim settlement practices. Section 541.003 of the Texas Insurance Code provides that a person may not engage in a trade practice that is defined in Chapter 541 as an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

31. Section 541.061 provides that it is an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. Defendant violated these provisions when it mischaracterized hail damage

**PLAINTIFF'S ORIGINAL PETITION**  **Page 7 of 13**

as preexisting or cosmetic and denied Plaintiff's claim knowing that the claim was worth at least $143,702.10.

> The interior leaks in the restaurant were attributable to deterioration and deferred maintenance of the metal panels, fasteners, and roof penetrations.

32. Zeinert's untrue statements of material fact, is also evidence of statements that would mislead a reasonably prudent person to a false conclusion of a material fact that the damage was caused by something other than hail damage.

33. Section 541.051 prohibits making, issuing, or circulating an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued: the terms of the policy or the benefits or advantages promised by the policy. Defendants violated this provision when it mischaracterized the policy as full coverage when it contained a litany of exclusions for metal roofing components. Plaintiff would not have purchased this policy if the exclusions were disclosed before purchase.

34. Section 541.060 provides that it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in any of nine categories of unfair settlement practices defined by the statute. The nine categories include (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim where the insurer's liability has become reasonably clear; (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim or offer of compromise settlement; (4) failing within a

**PLAINTIFF'S ORIGINAL PETITION**                                           **Page 8 of 13**

reasonable time to affirm or deny coverage of a claim or submit a reservation of rights letter; and (7) refusing to pay a claim without conducting a reasonable investigation.

35. Liberty Mutual misrepresented a material fact or policy provision relating to coverage at issue when it intentionally mischaracterized the cause and extent of hail damage to Plaintiff's property. Defendant promised to cover "direct physical loss" to the property and failed to do so. According to Plaintiff's general contractor the damage to the property was at least $148,462.10.

36. Defendants Liberty Mutual and Zeinert refused to meet Plaintiff's general contractor at the property to reconcile the differences in the estimates, failed to acknowledge with reasonable promptness pertinent communications with respect to the claim, and failed to respond promptly to a request by Plaintiff for personal contact about or review of the claim in violation of 28 TAC §21.203 of the Administrative Code.

37. Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim where its liability become reasonably clear. Misrepresenting demonstrable damages as cosmetic or preexisting to avoid making payments to Plaintiff is not good faith. It's evidence of conscious disregard of the truth.

38. Defendant's scant denial letters provided no explanation for the basis for delaying payment of the $143,702.10 claim. Defendant also advertised goods or services with intent not to sell them as advertised in violation of the DTPA. Defendant's promised to cover "direct physical loss" to the property and never intended to do

**PLAINTIFF'S ORIGINAL PETITION**                                  **Page 9 of 13**

so. Plaintiff paid his premiums timely and expected to be covered in the event of a catastrophic loss.

39. Liberty Mutual has intentionally failed to adopt and implement reasonable standards for prompt investigation of claims arising under its policies in violation of 28 TAC §21.203 of the Administrative Code. Defendant violated all of these provisions when it delayed payment of Plaintiff's claim and refused to respond to requests for information promptly. Plaintiff is entitled to 18% interest and attorney's fees in addition to the dilatory payment for benefits owed.

40. Defendant has also failed to maintain a complete record of all complaints which it has received during the preceding three years. Liberty Mutual systematically compels policyholders to initiate suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them in violation of 28 TAC §21.203 of the Administrative Code.

41. Together, Defendants misrepresented to Plaintiff the cause and extent of damage to the property. As a result of the aforementioned conduct, Plaintiff has incurred damages within the jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION
### BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

42. Plaintiff incorporates herein by reference paragraphs 1 through 41.

43. Under Texas law accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a *tort* as well as a breach of contract. This duty of good faith and fair dealing arises out of the special trust relationship between the insured and the insurer.

44. The duty of good faith and fair dealing is thus imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

45. Here, there was no reasonable basis for denying full benefits for the roof claim.

46. Liberty Mutual orchestrated the investigation in a manner calculated to construct a pretextual basis for denial or underpayment of Plaintiff's claim.

47. A reasonable insurer under similar circumstances would not have delayed or denied Plaintiff's claim. Based on the foregoing facts, Liberty Mutual actually knew or should have known there was no reasonable basis to delay payment.

## FOURTH CAUSE OF ACTION
## BREACH OF THE PROMPT PAYMENT OF CLAIMS ACT

48. Plaintiff incorporates herein by reference paragraphs 1 through 47.

49. Liberty Mutual systematically compels policyholders to initiate suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them in violation of 28 TAC §21.203 of the Administrative Code.

50. Liberty Mutual failed to notify Plaintiff in writing of the acceptance or rejection of his $143,702.10 claim, including the reasons for the rejection.[3]

---

[3] Tex. Ins. Code §542.056

**PLAINTIFF'S ORIGINAL PETITION**             **Page 11 of 13**

51. Liberty Mutual failed to provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Liberty Mutual's denial of Plaintiff's claim and failed within a reasonable time to affirm or deny coverage of Plaintiff's claim.

52. Liberty Mutual failed to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies and failed to respond promptly to a request by Plaintiff for personal contact about or review of the claim.

53. Plaintiff is entitled to the entire amount to restore his home to the same position before the loss plus 18% penalty interest per annum on the amount unreasonably withheld, together with reasonable attorney's fees.[4]

54. The attorney's fees shall be taxed as part of the costs in the case.

## ATTORNEY'S FEES

55. Plaintiff seeks recovery of her reasonable attorney's fees and costs against Defendants in accordance with §38.001 *et seq.* of the Texas Civil Practice and Remedies Code, and §541 *et seq.* and §542 *et seq.* of the Texas Insurance Code.

## CONDITIONS PRECEDENT

56. All conditions precedent to Plaintiff's right of recovery of all causes of action pleaded herein have been performed, have occurred, or been excused.

## JURY DEMAND

57. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

---

[4] TEX. INS. CODE §542.060.

**PLAINTIFF'S ORIGINAL PETITION**    Page 12 of 13

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial by jury hereof, said Plaintiff recover judgment for actual damages and punitive against Defendant, including penalty interest thereon; that upon a finding that Liberty Mutual or its agents acted knowingly Plaintiff be entitled to recover from Liberty Mutual and its agents additional damages in an amount of up to three times his actual damages; that Plaintiff be awarded reasonable attorney's fees and expenses incurred in obtaining judgment against Defendant and any appeals of this case; and that Plaintiff be granted all further relief, either at law or in equity, including punitive or exemplary damages, to which she may show himself justly entitled.

Respectfully submitted,

**CLIFFORD K. NKEYASEN**PLLC
Attorneys + Counselors
4310 N. Central Expy, Suite 103
Dallas, TX 75206
Tel: (469) 249-9271
Fax: (469) 249-9113
**clifford@coveragedenied.com**

By:___/s/ *Clifford Nkeyasen*_____
Clifford K. Nkeyasen
Texas Bar No: 24044876

**ATTORNEYS FOR PLAINTIFF**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Elisabeth Marquess on behalf of Clifford Nkeyasen
Bar No. 24044876
paralegal@coveragedenied.com
Envelope ID: 73223747
Status as of 3/1/2023 10:37 AM CST

Associated Case Party: Webster Enterprises, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Shelby Solis | | paralegal@coveragedenied.com | 3/1/2023 10:34:18 AM | SENT |
| Clifford Nkeyasen | | clifford@coveragedenied.com | 3/1/2023 10:34:18 AM | SENT |





**Karen Wilson**
District Clerk
121 East Dallas, Room 302
Canton, TX 75103

7022 1670 0001 6732 0356





US POSTAGE IM PITNEY BOWES

ZIP 75103 $ 009.24
02 4W
0000380198 MAR 13 2023

LIBERT MUTUAL FIRE INSURANCE
COMPANY ATTORNEY FOR SERVICE:
CORPORATION SERVICE COMPANY
211 E. 7TH STREET, SUITE 620
AUSTIN, TEXAS 78701-3218